UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RED SQUARE, LLC,**

    **Plaintiff,**

    v.                                                       Case No.: 2:14-cv-2064
                                                            JUDGE GEORGE C. SMITH
                                                            Magistrate Judge Deavers

**HDAV OUTDOOR, LLC,** *et al.***,**

    **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 8). Plaintiff responded in opposition (Doc. 10) and Defendants replied in support of their motion (Doc. 11). For the following reasons, the Defendants' Motion is **GRANTED.**

                                                      **I.    BACKGROUND**

This dispute arises out of a contract and the resulting business relationship between Plaintiff and Defendants. Plaintiff Red Square, LLC ("Plaintiff") is an Ohio advertising company. Plaintiff sells advertising space on LED advertising trucks that are generally used at special events and promotions. (*See* Doc. 1, Cmpl. at ¶ 7). Defendants are HDAV Outdoor, LLC ("HDAV") and HDAV's owner Craig Shreiber (collectively "Defendants"). HDAV is a Nevada company that "develops digital media hardware" and customizes the above-mentioned LED advertising trucks. (Doc. 8-1, Shreiber Aff. at ¶ 3). Mr. Shreiber is a Nevada resident. (*See* Doc. 1, Cmpl. at ¶ 3).

In November 2013, Mohamood Razack, an employee of Plaintiff, contacted Peter Fisher,

an employee of Dynamic Mobile Media, to inquire about customization for an advertising truck. (*See* Doc. 10-1, Razack Aff. at ¶¶ 4–5). Dynamic Mobile Media is an Illinois company that sells LED custom systems on behalf of various manufacturers, including HDAV. (*See* Doc. 8-1, Shreiber Aff. at 9). Mr. Fisher and Mr. Razack negotiated the business contract between Plaintiff and HDAV. (*See* Doc. 10-1, Razack Aff. at ¶¶ 4–13). Mr. Fisher did not just set up Plaintiff with Defendants; Mr. Fisher helped Plaintiff choose and purchase a suitable truck, helped create the invoice for HDAV, and explained the certification process to Mr. Razack. (*See* Doc. 10-2, Truck Purchase Emails; Doc. 10-3, Certification Emails; Doc. 10-4, Invoice Emails). Throughout the negotiations, Mr. Fisher listed "HDAV Outdoors LLC" on the signature block of his email. (*Id.*). The invoice for the work to be performed by HDAV totaled $86,480. (*See* Doc. 1, Cmpl. at ¶ 11). Included in the invoice was a warranty offering a five year limited warranty on the LED displays." (*See* Doc. 10-4, Invoice at 2). In a July 2014 email, Mr. Shreiber explained to Mr. Razack that HDAV passed through manufacturer's warranties and had a five year warranty on "the LED screen, controllers, power supplies and wiring harness." (*See* Doc. 10-5, Warranty Email). Mr. Fisher delivered the invoice to Mr. Razack on December 30, 2013. (*See* Doc. 10-1, Razack Aff. at ¶ 12. After signing the invoice, Mr. Razack dealt directly with Mr. Shreiber. (*Id.* at ¶ 14).

Plaintiff purchased a truck from a third party, per Mr. Fisher's recommendation, and delivered the truck to Defendants in Nevada for customization in January 2014. (*Id.* at ¶ 15). Defendants performed the work in Nevada while maintaining communications with Plaintiff. (*Id.* at ¶¶ 16–18). Plaintiff's representatives visited Defendant in Nevada to discuss and inspect the truck in January, February, April, June, and July of 2014. (*See* Doc. 1, Cmpl. at ¶¶ 13-14, 18, 20). No HDAV representatives visited Ohio and all in-person meetings took place in Nevada.

(*See* Doc. 8-1, Shreiber Aff. at ¶¶ 13, 15). HDAV did not complete the truck within the original time frame quoted to Plaintiff and offered to deliver the truck to Plaintiff in Ohio to compensate for the delay in completion. (*See* Doc. 1, Cmpl. at ¶ 19). However, due to an apparent insurance issue, Plaintiff ultimately retrieved the finished truck from Nevada and transported it back to Ohio. (*See* Doc. 1, Cmpl. ¶ 21; Doc. 10-1, Razack Aff. at ¶ 18).

Plaintiff brought this case against Defendants alleging significant problems with the vehicle, including the installation of a used and faulty generator, an inadequate exhaust system, and a used air conditioning unit, damage to the body of the vehicle, and other issues that necessitate approximately $25,000 in repairs.

## II.  STANDARD OF REVIEW

When confronted with a Rule 12(b)(2) motion, "[t]he plaintiff bears the burden of establishing the existence of jurisdiction." *Estate of Thompson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360 (6th Cir. 2008) (citing *Brunner v. Hampson*, 441 F.3d 457, 462 (6th Cir. 2006)). When the Court resolves a Rule 12(b)(2) motion based on "written submission and affidavits . . . rather than resolving the motion after an evidentiary hearing or limited discovery, the burden on the plaintiff is 'relatively slight,' . . . and 'the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal.'" *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988); *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). Under such circumstances "the pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh 'the controverting assertions of the party seeking dismissal.'" *Id.* (quoting *Theunissen*, 935 F.2d at 1459).

Although Plaintiff's *prima facie* burden is relatively slight, the Court must still find that "'[P]laintiff has set forth specific facts that support a finding of jurisdiction in order to deny the motion to dismiss.'" *Palnik v. Westlake Entm't, Inc.*, 344 F. App'x 249, 251 (6th Cir. 2009) (quoting *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 (6th Cir. 2006)). Thus, "it remains the plaintiff's burden and the complaint must have 'established with reasonable particularity' those specific facts that support jurisdiction." *Id.* (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002)). Consequently, the rules are designed in part to protect potential defendants from a "plaintiff's bald allegation of jurisdictional facts." *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).

"In diversity cases, federal courts apply the law of the forum state to determine whether personal jurisdiction exists." *Nationwide Mut. Ins. Co. v. Tryg Intern. Ins. Co., Ltd.*, 91 F.3d 790, 793 (6th Cir. 1996) (citations omitted). In order for personal jurisdiction to be proper, "both the state['s] long-arm statute and constitutional due process requirements" must be met. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). As the United States Court of Appeals for the Sixth Circuit has noted, "Ohio's long-arm statute is not coterminous with federal constitutional limits." *Estate of Thompson*, 545 F.3d at 361 (citing *Calphalon Corp.*, 228 F.3d at 721). Thus, for the Court to have personal jurisdiction, it must find that the requirements of both Ohio's long-arm statute and constitutional due process are met. *Id.*

### III.  DISCUSSION

Defendants have moved to dismiss this case for lack of personal jurisdiction. They argue that the facts of the case do not satisfy Ohio's long arm statute or the constitutional demands of due process. Plaintiff, however, contends that Defendants' contact with Ohio satisfies both statutory and constitutional due process concerns.

4

**A.    Agency**

As an initial matter, the Court must determine whether Mr. Fisher's actions and contact with Ohio should be attributed to Defendants. Plaintiff argues that Mr. Fisher acted as an agent of Defendants, and as such, his conduct should be imputed to Defendants to establish minimum contacts for personal jurisdiction. Defendants do not dispute this contention.

"An agent's contacts with a forum may be imputed to the principal for purposes of establishing personal jurisdiction." *Stolle Mach. Co., LLC v. RAM Precision Indus.*, No. 3:10-CV-155, 2011 WL 6293323, at *8 (S.D. Ohio Dec. 15, 2011) (citing *McFadin v. Gerber*, 587 F.3d 753, 761 (5th Cir. 2009)). "Whether or not an agent is initially authorized to act on behalf of a principal, the agent's actions may be attributed to the principal, for purposes of personal jurisdiction, if the principal later ratifies the agent's conduct." *Stolle*, 2011 WL 6293323, at *8 (quoting *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 55 (1st Cir. 2002)). Here, Plaintiff alleges that Mr. Fisher accepted business inquiries and negotiated a contract with Plaintiff on behalf of HDAV via phone and email while Plaintiff was located in Ohio. Throughout Mr. Fisher's contact with Plaintiff, he used Defendant's company in his email signature and recommended HDAV products. Further, Defendants ultimately ratified Fisher's actions when it adopted the contract he negotiated. Because HDAV ratified Fisher's actions and Defendant does not dispute Plaintiff's suggestion that Mr. Fisher should be viewed as an agent, this Court will impute Fisher's actions to Defendants for purposes of establishing personal jurisdiction.

**B.    Due Process**

Plaintiff asserts that an exercise of personal jurisdiction over Defendants would not violate due process because the burden on Defendants is low and Ohio has a strong interest in

5

deciding the controversy. Defendants contend that a finding of personal jurisdiction would violate due process because they did not have sufficient minimum contacts to expect being haled into court here.

To obtain personal jurisdiction over a foreign person or entity, the notions of due process and the requirements of Ohio's Long-Arm Statute must both be satisfied. *See Nationwide*, 91 F.3d at 793 ("A valid assertion of personal jurisdiction must satisfy both the state long-arm statute, and constitutional due process.").

In determining whether the notions of due process have been met, the Court must undertake a three-part analysis. First, the Court must determine whether the defendant "purposefully avail[ed] himself of the privilege of acting in the forum state." *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). This requirement safeguards a defendant from being haled into a jurisdiction "solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotations and citations omitted). While a defendant need not be physically present to meet this standard, he must have deliberately engaged in significant activities or created continuing obligations with the state. *Id*. at 475–76.

Second, the Court must consider whether the cause of action arose from the defendant's activities there. "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *See Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002) (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996)).

Third, the Court must determine whether the defendant's acts or consequences thereof have "a substantial enough connection with the forum state to make the exercise of jurisdiction

6

over the defendant reasonable." *Southern Mach.*, 401 F.2d at 381.  This third prong requires the Court to consider whether exercising its jurisdiction would offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington*, 326 U.S. 310 (1945). This analysis involves the evaluation of several factors including the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the overall interest of securing the most efficient resolutions of controversies.  *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cnty.*, 480 U.S. 102, 113 (1987).

First, the Court will consider the first criterion: purposeful availment.  "[T]he existence of a contract, alone, is not purposeful availment.  Prior negotiations and contemplated future consequences along with the terms of the contract and the parties' actual course of dealing must be evaluated." *Int'l Content Liquidation, Inc. v. Trinitas Hosp.*, No. 3:04-CV-449, 2005 WL 1892466, at *4 (S.D. Ohio Aug. 9, 2005) (citing *Nationwide,* 91 F.3d at 795).  Here, Plaintiff does not allege that Defendants or Mr. Fisher initiated contact or business interactions with Plaintiff.  Nor does Plaintiff allege that Defendants or Fisher directed marketing to Ohio residents.  Furthermore, Defendants did not pick up or deliver the truck to Ohio; rather, Plaintiff delivered the vehicle to Defendants in Nevada and retrieved the truck in Ohio.  In response, Plaintiffs offers two arguments, neither of which the Court finds convincing.  First, Plaintiff asserts that Defendants offered to deliver the truck to Ohio.  However, that offer was not part of the original bargain, and regardless, Plaintiff ultimately retrieved the vehicle from Nevada.

Second, Plaintiff argues that Defendant's "warranty" demonstrates their purposeful availment by way of their continuing obligation to service the truck in Ohio.  The first mention of the warranty is contained in the invoice Defendants sent to Plaintiff.  It states in applicable part, "The LED displays will have a five (5) year warranty."  (Doc. 10-4, Invoice, at 4).  The

7

warranty language in the invoice is very limited. A later email from Mr. Shreiber to Mr. Razack included additional information about the warranty:

> To summarize HDAV's factory warranty policy, we pass through the manufacturer's warranty that is provided on new and used equipment we install in your truck. Equipment provided by our clients, such as the vehicle, is covered by whatever warranty the client has negotiated with the equipment provider. Our warranty on the LED screen, controllers, power supplies and wiring harness is provided with a 5 year limited warranty.

(Doc. 10, Ex. 5; email, at 2).

Therefore, while Defendants have guaranteed the parts installed on Plaintiff's truck, there is no evidence that this continuing obligation/warranty ties Defendants to Ohio. Rather, Plaintiff delivered the vehicle to Nevada to have the products installed and picked up there. It is therefore reasonable to believe that any service on the products would also take place in Nevada. The parties' course of dealings also suggests that Defendants do not have a continuing obligation in Ohio because all work was performed in Nevada. In sum, although Defendants provided a warranty to Plaintiff, Plaintiff has not shown how that warranty creates a continuing obligation to Ohio. Accordingly the Court finds Defendants have not purposefully availed themselves of Ohio law.

Moreover, even if Plaintiff had established purposeful availment, the Court would still decline to exercise jurisdiction because Plaintiff has not satisfied the third element of a due process claim. "To satisfy the third element, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Int'l Content*, 2005 WL 1892466, at *5. Here, Defendants did not seek Plaintiff as a customer. Rather, Defendants were solicited by the Plaintiff. Defendants struck a bargain with Plaintiff to have the vehicle delivered to their Nevada location and picked up from the same. If this Court were to subject Defendants to personal

8

jurisdiction in Ohio, it would set a precedent that businesses must *refuse* business deals from all people and businesses in other states unless they are willing to be subjected to litigation in the customer's state. Although Plaintiff argued that Defendants have a continuing obligation in Ohio through the warranty, the terms of that warranty are ambiguous. The warranty never states that repairs would be performed in Ohio, and all of the original work was performed at Defendants' workplace in Nevada. As such, the Court finds exercising personal jurisdiction over Defendants would be unreasonable because Defendants do not have an adequate connection to the state.

The evidence demonstrates that Defendants did not purposefully avail themselves of Ohio law, and the exercise of jurisdiction over Defendants would be unreasonable. A finding of personal jurisdiction would thus violate due process.

**C.**     **Long arm statute**

Because jurisdiction is improper under due process, a full analysis of Ohio's long arm statute is unnecessary. *Conn*, 667 F.3d at 712 (finding that because personal jurisdiction requires the plaintiffs to meet both due process and the forum state's long arm statute, failure of either is fatal to jurisdiction).

**D.**     **Limited Jurisdictional Discovery**

Plaintiff also asked the Court to allow it to proceed with limited jurisdictional discovery before reaching a decision on this issue. Plaintiff argues that without limited jurisdictional discovery, Defendants could defeat jurisdiction by withholding information concerning its contacts with Ohio. Defendants contend that Plaintiff's request should be denied because no additional information would be helpful to the jurisdictional analysis.

When determining a motion to dismiss for lack of personal jurisdiction, a district court "may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of

the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Drexel Chem. Co. v. SGS Depauw & Stokoe*, 59 F.3d 170 (6th Cir. 1995) (citing *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)).  "Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'" *Carr v. DJO Inc.*, No. 3:12–cv–42, 2012 WL 3257666, at *3 (S.D. Ohio Aug. 8, 2012) *report and recommendation adopted,* 2012 WL 4050165 (S.D. Ohio Sept. 13, 2012) (citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)).

    Here, Plaintiff seeks limited jurisdictional discovery to determine whether HDAV has ever had representatives or other business dealings in Ohio. (Doc. 10, Resp. at 14).  Plaintiff also seeks limited discovery to acquire additional evidence to support its position that Fisher was acting as an agent of HDAV. (*Id.*).  While neither of these reasons for limited discovery are theoretically frivolous, neither would allow Plaintiff to succeed in establishing personal jurisdiction here.  The Court already ruled that Mr. Fisher's contacts with Ohio are attributable to Defendants for purposes of the personal jurisdiction analysis.  Plaintiff conceded that it made the initial business contact, delivered and retrieved the truck to and from Nevada, and failed to present evidence of any continuing obligation by Defendants to the state of Ohio.  These combined elements are fatal to Plaintiff's personal jurisdiction argument.  Because the evidence Plaintiff seeks would not affect the Court's personal jurisdiction analysis, the Court denies Plaintiff's request for limited jurisdictional discovery.

## IV. CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is **GRANTED** and Plaintiff's request for limited jurisdictional discovery is **DENIED**.

The Clerk shall **REMOVE** Document 8 from the Court's pending motions list.  The Clerk shall **REMOVE** this case from the Court's pending cases list.

**IT IS SO ORDERED.**

                */s/ George C. Smith*
                **GEORGE C. SMITH, JUDGE**
                **UNITED STATES DISTRICT COURT**